# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

|  |  |
|---|---|
| BRENDA MEZA,<br><br>          Plaintiff,<br><br>      v.<br><br>ERIK BONNAR, Acting Field Office Director of San Francisco Office of Detention and Removal, et al.,<br><br>          Defendants. | Case No. 18-cv-02708-BLF<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

Petitioner Brenda Meza, a non-citizen in removal proceedings, seeks a preliminary injunction to enjoin the Department of Homeland Security ("DHS") from re-detaining her pending a hearing on the merits of her petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. Petitioner filed both the habeas petition and an application for a temporary restraining order ("TRO") on May 8, 2018, asserting that: she was released on bond by an Immigration Judge ("IJ") following a lengthy detention by the Immigration and Customs Enforcement ("ICE") division of DHS; the bond order was vacated by the Board of Immigration Appeals ("BIA") on improper grounds; and the Government has taken the position that she now may be re-detained by ICE at any time. The petition contains a single claim under the Due Process Clause of the Fifth Amendment, alleging that she has a vested liberty interest in her current conditional release and thus is entitled to a hearing before any re-detention, and that any re-detention would be unlawful.

The Court granted a TRO on May 10, 2018 for a period of 14 days, issued an Order to Show Cause why a preliminary injunction should not issue, and set a hearing for May 24, 2018. At the hearing, the Court stated that it was inclined to grant a preliminary injunction but that it needed more time to consider fully all of the parties' arguments and issue a reasoned decision. Counsel for the Government consented to an extension of the TRO for an additional 14 days, through June 7, 2018, for that purpose.

United States District Court
Northern District of California

1      Having considered the briefing of the parties, the oral argument of counsel, and the applicable

2   law, the Court GRANTS a preliminary injunction as follows:  ICE is enjoined from re-detaining

3   Petitioner pending this Court's disposition of her petition for writ of habeas corpus absent an

4   administrative hearing at which it is determined that a material change in circumstances, including but

5   not limited to violation of conditions of release, warrants Petitioner's re-detention.

6   **I.      BACKGROUND**

7      Petitioner is a native and citizen of Guatemala.  IJ Memorandum at 1, Exh. K to

8   Rabinovich Decl., ECF 3-2.  She was admitted to the United States in 1992 as an immigrant.  *Id.*

9   She subsequently was placed in removal proceedings, but she was granted withholding of removal

10   in 2007.  *Id.*  However, she was placed in removal proceedings again in June 2016 after being

11   convicted of, and serving a prison term for, child abuse.  Meza Decl. ¶¶ 9-12, Exh. A to

12   Rabinovich Decl., ECF 3-2.  ICE took custody of Petitioner at the commencement of removal

13   proceedings and detained her for approximately 13 months until an IJ released her on bond in

14   August 2017.  *Id.* ¶ 12.  Petitioner had filed a motion for a bond hearing pursuant to the Ninth

15   Circuit's decision in *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) ("*Rodriguez III*"), *rev'd*

16   *sub nom.*, *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).  IJ Memorandum at 1, Exh. K to

17   Rabinovich Decl., ECF 3-2.  In *Rodriguez III*, the Ninth Circuit construed applicable immigration

18   statutes to require that detained aliens be granted bond hearings every six months and that the

19   government bears the burden of demonstrating danger to the community or risk of flight.

20   *Rodriguez III*, 804 F.3d at 1090.  The IJ found that Petitioner had "demonstrated that she no longer

21   poses a danger to others and that she is not a risk of flight."  IJ Memorandum at 2, Exh. K to

22   Rabinovich Decl., ECF 3-2.

23      On February 27, 2018, the Supreme Court issued *Jennings v. Rodriguez*, which reversed

24   the Ninth Circuit's decision in *Rodriguez III* and remanded for further proceedings.  *Jennings v.*

25   *Rodriguez*, 138 S. Ct. 830, 851-52 (2018).  The Supreme Court held that the Ninth Circuit

26   "erroneously concluded that periodic bond hearings are required under the immigration provisions

27   at issue," but it remanded so that the Ninth Circuit could take up the question – left open by the

28   Supreme Court – whether such hearings are required by the Constitution.  *Id.*

1      The BIA vacated the IJ's bond order on April 23, 2018.  BIA Decision, Exh. L to

2   Rabinovich Decl., ECF 3-2.  The BIA did not address the IJ's determinations that Petitioner was

3   not a danger or a flight risk, but rather it concluded that in light of *Jennings v. Rodriguez* "there is

4   no statutory or regulatory authority for an Immigration Judge's exercise of jurisdiction over

5   motions for bond hearings filed pursuant to *Rodriguez III*." *Id*.

6      On May 3, 2018, Petitioner's counsel contacted the United States Attorney's Office for the

7   Northern District of California to seek assurance that ICE would not detain Petitioner at her

8   upcoming May 16, 2018 immigration hearing, or otherwise.  Rabinovich Decl. ¶¶ 11-12.  The

9   United States Attorney's Office declined to give the requested assurance.  *Id*.  Petitioner then

10  commenced the present action.

11  **II.    LEGAL STANDARD**

12      In order to obtain a preliminary injunction under the *Winter* standard established by the

13  Supreme Court, a party must show 'that he is likely to succeed on the merits, that he is likely to

14  suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his

15  favor, and that an injunction is in the public interest.'" *All. for the Wild Rockies v. Pena*, 865 F.3d

16  1211, 1217 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

17  "Under the 'sliding scale' variant of the *Winter* standard, if a plaintiff can only show that there are

18  serious questions going to the merits – a lesser showing than likelihood of success on the merits –

19  then a preliminary injunction may still issue if the balance of hardships tips sharply in the

20  plaintiff's favor, and the other two *Winter* factors are satisfied." *Id*. (internal quotation marks and

21  citation omitted).

22  **III.   DISCUSSION**

23      In light of the Supreme Court's determination that periodic bond hearings for detained

24  aliens are not required by the applicable immigration statutes, *see Jennings*, 138 S. Ct. at 851-52,

25  and the uncertainty as to whether such hearings are required by the Constitution, *see id.*, the Court

26  concludes that Petitioner has not established that she is "likely" to succeed on the merits of the

27  Due Process claim asserted in her habeas petition.  The Court therefore evaluates her request for a

28  preliminary injunction under the "sliding scale" variant of the *Winter* standard.

### A.      Serious Questions Going to the Merits

As discussed above, Petitioner requested a bond hearing pursuant to *Rodriguez III*, in which the Ninth Circuit determined that detained aliens are entitled to periodic bond hearings under the applicable immigration statutes, and she was granted bond based on the IJ's factual determinations that she does not pose a danger to others and is not a risk of flight.  The BIA vacated the bond order solely based on the Supreme Court's determination in *Jennings* that detained aliens have no statutory entitlement to periodic bond hearings.  Petitioner argues that the BIA's decision to vacate the bond order was improper both because it was an unlawful retroactive application of *Jennings*, and because *Jennings* did not affect detained aliens' constitutional – as opposed to statutory – rights to periodic bond hearings.  She argues further than she has a vested liberty interest in her current conditional release and thus may not be re-detained absent a hearing.

The Government argues that Petitioner's constitutional claim is foreclosed by *Demore v. Kim*, 538 U.S. 510 (2003), in which the Supreme Court rejected a constitutional challenge to a statutory provision mandating detention of certain aliens, including those convicted of an aggravated felony, during removal proceedings.  The Court held that detention of such aliens without individualized bond hearings "for the brief period necessary for their removal proceedings" did not run afoul of the Due Process Clause.  *Id.* at 513-16.  Petitioner counters with a citation to *Zadvydas v. Davis*, 533 U.S. 678 (2001), in which the Supreme Court held that the Due Process Clause prohibited the "indefinite" and "potentially permanent" detention of aliens subject to final removal orders but as to whom removal was not practically attainable.  The Supreme Court recognized six months as a "presumptively reasonable period of detention" without a bond hearing.  *Id.* at 701.

Factually, this case falls between *Demore* and *Zadvydas*, as Petitioner's 13-month detention prior to her release on bond is longer than the "brief" detention contemplated by *Demore* but does not rise to the level of the "indefinite" detention addressed in *Zadvydas*.  Given the absence of authority on all fours with the present case, and the Supreme Court's remand to the Ninth Circuit, this Court finds that there are serious questions going to the merits of Petitioner's claim that the Constitution requires periodic bond hearings for aliens in removal proceedings who

4

1    have been detained for lengthy periods of time – here, 13 months.  The Court also finds that there

2    are serious questions going to the merits of Petitioner's claim that she has a vested liberty interest

3    in her conditional release such that she may not be re-detained absent due process.  *See Hurd v.*

4    *D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (collecting cases) ("The Supreme Court has

5    repeatedly held that in at least some circumstances, a person who is in fact free of physical

6    confinement – even if that freedom is lawfully revocable – has a liberty interest that entitles him to

7    constitutional due process before he is re-incarcerated.").  In the present case, due process would

8    seem to require an administrative hearing to show a material change in circumstances.  *See*

9    *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

10          The Court suggested in its TRO that Petitioner's retroactivity argument also might raise

11   serious questions going to the merits, stating that "it is unclear whether the BIA's retroactive

12   application of the Supreme Court's *Jennings* decision was a permissible basis for vacating the IJ's

13   bond decision under *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971)."  TRO at 4, ECF 9.  Having

14   benefitted from further briefing on the issue, however, the Court now finds the retroactivity

15   argument to be less persuasive.  As the Government points out, the IJ's bond order had been

16   appealed to the BIA and thus was not yet final when *Jennings* issued.  The Supreme Court has

17   made clear that when it announces a controlling interpretation of a federal statute, that

18   interpretation "must be given full retroactive effect in all cases still open on direct review and as to

19   all events, regardless of whether such events predate or postdate our announcement of the rule."

20   *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993).  "A judicial construction of a statute

21   is an authoritative statement of what the statute meant before as well as after the decision of the

22   case giving rise to that construction."  *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312-13 (1994).

23   "[T]he legal imperative to apply a rule of federal law retroactively after the case announcing the

24   rule has already done so must prevail over any claim based on a *Chevron Oil* analysis."  *Harper*,

25   509 U.S. at 98 (internal quotation marks, citation, and alteration omitted).

26          Petitioner argues that a *Chevron Oil* analysis nonetheless is appropriate here, citing *Nunez-*

27   *Reyes v. Holder*, 646 F.3d 684 (9th Cir. 2011).  In *Nunez-Reyes*, the Ninth Circuit acknowledged

28   the default principle that a court's decisions apply retroactively to all pending cases, but it

5

1 recognized a narrow set of circumstances in which an appellate court may have the option under

2 *Chevron Oil* to apply a rule only prospectively: "(1) in a civil case; (2) when we announce a new

3 rule of law, as distinct from applying a new rule that we or the Supreme Court previously

4 announced; (3) and when the new rule does not concern our jurisdiction." *Id.* at 691. The second

5 of these circumstances does not appear to be met here, where the BIA applied a new rule

6 previously announced by the Supreme Court in *Jennings*. However, this Court need not decide

7 whether Petitioner's retroactivity argument raises serious questions sufficient to meet the first

8 prong of the sliding scale variant of *Winter*, because as discussed above there are serious questions

9 as to whether Petitioner is constitutionally entitled to periodic bond hearings and to an

10 administrative hearing prior to any re-detention.

11          **B.**      **Remaining *Winter* Factors**

12       Absent issuance of a preliminary injunction, Petitioner could be taken into ICE custody at

13 any time after expiration of the TRO. Petitioner's counsel requested an assurance from the

14 Government that ICE will not re-detain Petitioner pending disposition of her habeas petition, and

15 the Government has declined to give such an assurance. The Ninth Circuit has recognized "the

16 irreparable harms imposed on anyone subject to immigration detention (or other forms of

17 imprisonment)." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

18       In contrast, any impact on Respondents will be minimal. An IJ already has found as a

19 factual matter that Petitioner poses no risk of danger or flight. At the hearing on the motion for

20 preliminary injunction, counsel for the Government represented that she is unaware of any current

21 plans to re-detain Petitioner. Under these circumstances, the balance of hardships tips sharply in

22 Petitioner's favor.

23       Finally, "the general public's interest in the efficient allocation of the government's fiscal

24 resources" favors granting the TRO. The Ninth Circuit has recognized that "[t]he costs to the

25 public of immigration detention are 'staggering.'" *Hernandez*, 872 F.3d at 996. Given the low

26 risk of Petitioner's causing harm to others or fleeing, such expenditure in her case would not

27 benefit the public absent a material change in circumstances.

28

### C.    Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* Because the Court perceives no prejudice to Respondents resulting from the preliminary injunction, the Court finds it appropriate to issue the preliminary injunction without requiring security.

## IV.   ORDER

The Court GRANTS a preliminary injunction as follows: ICE is enjoined from re-detaining Petitioner pending this Court's disposition of her petition for writ of habeas corpus absent an administrative hearing at which an IJ, the BIA, or other neutral decision-maker determines that a material change in circumstances, including but not limited to violation of her conditions of release, warrants re-detention.

Dated:  June 4, 2018

BETH LABSON FREEMAN
United States District Judge

7