UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRENDA MEZA,<br><br>    Petitioner,<br><br>v.<br><br>ERIK BONNAR, et al.,<br><br>    Respondents. | Case No. 18-cv-02708-BLF<br><br>**ORDER GRANTING RESPONDENTS' MOTION TO DISMISS PETITION AS MOOT**<br><br>[Re: ECF 35] |

      Petitioner Brenda Meza ("Meza") was ordered removed from the United States to Guatemala in 2007 as a result of her criminal convictions, but she was granted withholding of removal. In 2016, the Department of Homeland Security ("DHS") initiated new removal proceedings, seeking to terminate Meza's withholding of removal based on her additional criminal convictions. DHS detained Meza for approximately thirteen months, until an Immigration Judge ("IJ") released her on bond pursuant to the Ninth Circuit's decision *Rodriguez III*, which held that applicable immigration statutes require periodic bond hearings for detained noncitizens. *See Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) ("*Rodriguez III*"), *rev'd sub nom.*, *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). While Meza was released on bond, the Supreme Court reversed *Rodriguez III* in *Jennings*, holding that periodic bond hearings for noncitizens are not required by statute. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 851-52 (2018). Based on *Jennings*, the Board of Immigration Appeals ("BIA") vacated the IJ's bond order, finding that it had been issued in the absence of statutory or regulatory authority.

Meza filed this habeas petition against Respondents (collectively, "the Government") the following month, asserting a liberty interest in her "current conditional release" from DHS custody under the Due Process Clause of the Fifth Amendment. Pet. ¶ 50. The petition points out that even though the statutory basis for the IJ's bond order was eliminated by *Jennings*, the *Jennings* decision left open whether periodic bond hearings for noncitizens are required by the Constitution.[1] *See id*. ¶¶ 29-32. The petition also asserts that *Jennings* cannot be applied retroactively to individuals like Meza, who previously have been granted bond under *Rodriguez III*. *See id.* ¶¶ 43-47. In her petition, Meza asks this Court "to prevent the Department of Homeland Security ('DHS') from returning her to an immigration jail pending resolution of her removal case without a due process hearing." Pet. ¶¶ 1, 50 ECF 1.

The Court granted a temporary restraining order ("TRO") and, subsequently, a preliminary injunction prohibiting DHS from re-detaining Meza absent an administrative hearing. Meza has not been re-detained by DHS, and her underlying removal proceedings have been terminated. The Government now moves to dismiss the petition as moot. Meza opposes the motion.

For the reasons discussed below, the Government's motion to dismiss is GRANTED and the petition is DISMISSED AS MOOT.

**I.      BACKGROUND**

*Removal Proceedings*

Meza is a native and citizen of Guatemala. *See* Louie Decl. ¶ 3, ECF 11-1. She entered the United States without inspection in or around 1984 and obtained Lawful Permanent Resident status in 1992. *See id.* In 2005, Meza was convicted of grand theft, perjury, and welfare fraud, and she was imprisoned until 2007. *See id.* ¶¶ 4-5. Upon Meza's release from prison, the Immigration and Customs Enforcement ("ICE") division of DHS initiated removal proceedings against her. *See id.* ¶ 5. On June 20, 2007, an IJ ordered Meza's removal to Guatemala but granted Meza's application for withholding of removal. *See id.* ¶ 6.

---

[1] The petition refers to the Supreme Court's *Jennings* decision as "*Rodriguez VI*."

2

In February 2013, Meza was convicted of second degree robbery and sentenced to 368 days in jail. *See* Louie Decl. ¶ 7. While she was on probation for the robbery conviction, Meza was convicted of corporal injury to a child and was sentenced to four years in prison. *See id.* ¶ 8. On June 28, 2016, ICE initiated removal proceedings against Meza, seeking to terminate her withholding of removal. *See id.* ¶ 9. ICE detained Meza for approximately thirteen months during the pendency of those removal proceedings, until an IJ released her on a $2,000 bond in August 2017. *See id.* ¶ 12, Exh. J. ICE successfully appealed the IJ's bond order, which was vacated by the Board of Immigration Appeals ("BIA") in April 2018. *See id.* ¶ 13, Exh. K. ICE did not take Meza into custody following the BIA's ruling. *See id.* ¶ 14.

*Current Habeas Petition*

Meza feared being re-detained by DHS at any time, including when she appeared for an immigration hearing scheduled for May 16, 2018. *See* Pet. ¶ 4. She filed her current habeas petition on May 8, 2018, asking the Court to enjoin ICE from re-detaining her during the pendency of her removal proceedings, absent a due process hearing. *See id.* ¶ 1. The petition asserts a single claim under the Due Process Clause of the Fifth Amendment, alleging in relevant part that "Petitioner has a vested liberty interest in her current conditional release," and "Due Process does not permit the government to strip her of that liberty without a hearing before this Court." *Id*. ¶¶ 48-50. The petition's prayer requests injunctive relief preventing ICE from re-arresting Meza without a prior hearing, and declaratory relief in the form of a statement that Meza cannot be re-arrested without a prior hearing. Pet., Prayer.

*Temporary Restraining Order*

On May 8, 2018, the same day she filed the habeas petition, Meza also filed an application for a TRO. *See* Applic. for TRO, ECF 3. Meza expressed concern that she might be re-detained by ICE when she appeared at an immigration hearing scheduled for May 16, 2018. *See id.* On May 10, 2018, this Court issued an order granting the requested TRO for a period of fourteen days, through May 24, 2018, and directing the Government to show cause why a preliminary injunction should not issue. *See* Order Granting Applic. for TRO, ECF 9. The Government agreed to an extension of the TRO for an additional fourteen days, through June 7, 2018, while the

3

1  Court considered whether to grant a preliminary injunction.  *See* Order Extending TRO, ECF 14.

*Preliminary Injunction and Stay of Habeas Proceedings*

On June 4, 2018, the Court granted a preliminary injunction.  *See* Order Granting Prel. Inj., ECF 15.  The Court's preliminary injunction order discussed the circumstances giving rise to Meza's prolonged detention by ICE, the IJ's bond order issued pursuant to *Rodriguez III*, the Government's appeal of the bond order, and the BIA's decision to vacate the bond order based on *Jennings*.  *See id*. at 2-3.  Against this backdrop, this Court considered whether Meza was entitled to a preliminary injunction pending disposition of her habeas petition.  *See id.* at 3.

The Court determined that Meza had not established a likelihood of success on the merits of her Fifth Amendment due process claim, given the Supreme Court's ruling in *Jennings* that periodic bond hearings for detained noncitizens are not required by statute, and the uncertainty whether such hearings are required by the Constitution.  *See* Pet. at 3.  However, the Court concluded that Meza had established serious questions going to the merits of her habeas petition and had satisfied the other requirements for preliminary injunctive relief under *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).  *See id.* at 4-7.  The Court therefore granted Meza the following preliminary injunctive relief: "ICE is enjoined from re-detaining Petitioner pending this Court's disposition of her petition for writ of habeas corpus absent an administrative hearing at which an IJ, the BIA, or other neutral decision-maker determines that a material change in circumstances, including but not limited to violation of her conditions of release, warrants re-detention."  *Id*. at 7.

On October 3, 2018, this Court granted Meza's motion for a stay of her habeas proceedings pending a decision by the Ninth Circuit in *Rodriguez v. Marin*, Case No. 13-56706, which presented the issue of whether the Constitution requires bond hearings for noncitizens subjected to prolonged detention.  *See* Order Granting Mot. for Stay, ECF 25.

*Termination of Removal Proceedings*

While the habeas case was stayed, Meza successfully moved to terminate the removal proceedings that had been initiated in 2016.  *See* Mehta Decl. ¶¶ 1-4, Exhs. 1-3.  The Government opposed Meza's motion to terminate and requested that the removal proceedings against her go

4

forward. *See* Mehta Decl. Exh. 2. The assigned IJ found that deficiencies in the Notice to Appear issued to Meza deprived the Immigration Court of jurisdiction, and terminated Meza's removal proceedings on July 26, 2019. *See* Mehta Decl. Exh. 3.

*Lifting of Stay and Government's Motion to Dismiss*

The parties did not immediately notify this Court when Meza's removal proceedings were terminated. On September 29, 2021, the Court issued an order requesting a status report. *See* Order Requesting Status Report, ECF 27. The Court noted that the Ninth Circuit had issued its decision in *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018), without providing guidance on whether the Constitution requires bond hearings for noncitizens subjected to prolonged detention. *See id.* The Court requested information on the status of Meza's removal proceedings and whether Meza intended to continue litigating her habeas petition. *See id.*

The parties filed a joint status report advising that Meza's removal proceedings had been terminated. *See* Joint Status Report, ECF 28. The parties took conflicting positions on whether termination of those removal proceedings moots Meza's petition. *See id.* The Court lifted the stay and approved the parties' proposed schedule for briefing the Government's motion to dismiss the petition as moot. Briefing on the Government's motion was completed in April 2022 and the Court heard argument in May 2022.

**II.   LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction," and as such "[t]hey possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "A federal court's jurisdiction is limited to cases or controversies." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997), *as amended* (Sept. 16, 1997). "A claim is moot if it has lost its character as a present, live controversy." *Id.* "A case that becomes moot at any point during the proceedings is no longer a 'Case' or 'Controversy' for purposes of Article III, and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (internal quotation marks and citation omitted). "There are, however, four major exceptions to the mootness doctrine, for (1) collateral legal consequences; (2) wrongs

5

capable of repetition yet evading review; (3) voluntary cessation; and (4) class actions where the named party ceases to represent the class." *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005).

### III. DISCUSSION

The Government argues that termination of Meza's removal proceedings renders her petition moot and that no exception to the mootness doctrine applies. Meza argues that her petition is not moot or, alternatively, that the following exceptions to the mootness doctrine apply: collateral consequences, voluntary cessation, and wrongs capable of repetition yet evading review. The Court finds that Meza's petition is moot and that the three exceptions asserted by Meza do not apply.

#### A.    Meza's Habeas Petition is Moot

Meza filed her habeas petition pursuant to 28 U.S.C. § 2241, which permits a district court to grant habeas relief to a petitioner who is "in custody" where such custody violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'" *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)). Declaratory and injunctive relief are proper habeas remedies. *See N.B. v. Barr*, 2019 WL 4849175, at *7 (S.D. Cal. Oct. 1, 2019).

The petition alleges that Meza is in the custody of ICE pursuant to the conditions of the IJ's bond order, that she has a vested liberty interest in her current conditional release, and that her Fifth Amendment due process rights would be violated if ICE were allowed to re-detain her without a hearing. *See* Pet. ¶¶ 8, 50-52. The petition asks the Court "to prevent the Department of Homeland Security ('DHS') from returning her to an immigration jail pending resolution of her removal case without a due process hearing." *Id*. ¶ 1. The petition seeks both an injunction prohibiting her re-arrest without a hearing, and a declaration that she cannot be re-arrested without a hearing. *See* Pet., Prayer.

Meza effectively has obtained all the relief sought in the petition. The removal proceedings initiated in 2016 have been terminated and Meza was not returned to an immigration

1  jail pending resolution of those proceedings. Moreover, the Court no longer can grant the
2  requested relief. The petition asks the Court to provide Meza with certain due process protections
3  during the pendency of her removal proceedings, but her removal proceedings have been
4  terminated. The Court therefore concludes that Meza's petition is moot.

5        This ruling is consistent with the decisions of other district courts within the Ninth Circuit.
6  For example, in *Lee*, the petitioner claimed that ICE had subjected him to indefinite detention
7  pending removal proceedings, without a hearing, in violation of the Due Process Clause of the
8  Fifth Amendment. *See Lee v. Hayes*, No. CV 07-6389-TJH(E), 2008 WL 4447578, at *2 (C.D.
9  Cal. Oct. 2, 2008). The petitioner sought a hearing to determine whether his detention was
10 justified. *See id.* The petitioner thereafter was released from detention and his removal
11 proceedings were terminated. *See id.* The district court dismissed the petition as moot,
12 concluding that "the release of Petitioner from detention and the termination of his removal
13 proceedings have given Petitioner all the relief to which he conceivably could be entitled." *Id.* at
14 *3. In *Quang Dien La*, the petitioner challenged the length of his detention in pre-removal
15 custody, seeking an order directing his immediate release. *See Quang Dien La v. Holder*, No. CIV
16 S-10-1757 DAD P, 2011 WL 6042798, at *1-2 (E.D. Cal. Dec. 5, 2011). Upon the petitioner's
17 release from detention, the district court dismissed the petition as moot, observing that it "can no
18 longer provide the relief sought because petitioner has been released from custody." *Id.* at *2. As
19 in *Lee* and *Quang Dien La,* the petition before the Court is moot because Meza effectively has
20 obtained all the relief sought and the Court no longer can grant the requested relief.

21       Meza's arguments to the contrary are unpersuasive. Meza asserts that she remains in
22 custody because she is subject to the IJ's August 2017 bond order, which released her from ICE
23 custody on a $2,000 bond and subject to certain conditions. As support for this assertion, Meza
24 submits her counsel's declaration statement that DHS has not returned the $2,000 bond amount to
25 Meza's son, who is the bond obligor. *See* Mullins Decl. ¶ 6, ECF 38-1. As noted above, the IJ's
26 August 2017 bond order was vacated by the BIA in 2018. *See* Louis Decl. ¶ 13, Exh. K. It is
27 unfortunate that the $2,000 bond amount has not been returned to Meza's son, but that fact does
28 not establish that Meza remains in custody pursuant to the vacated bond order.

1    Whether the petition satisfies the in custody requirement is not the critical question
2    presented by the Government's motion, however. The more substantial question is whether
3    termination of Meza's removal proceedings causes the petition to be moot because it no longer
4    presents a case or controversy under Article III. Meza argues that the petition "did not tether her
5    liberty interest nor argue that her right to a pre-deprivation hearing is dependent on *active* removal
6    proceedings." Opp. at 11. Meza emphasizes that she is subject to a final order of removal, and
7    that although she has been granted withholding of removal, DHS could re-arrest her at any time.
8    *See id.* at 1.

9    In the Court's view, the relief requested in the petition is tethered to the removal
10   proceedings that were initiated in 2016. The petition alleges that the in custody requirement is
11   satisfied by Meza's conditional release on bond in those removal proceedings, that Meza had a
12   constitutional right to the bond hearing, and that Meza has a liberty interest in her "current
13   conditional release" from ICE custody in those proceedings. Pet. ¶¶ 8, 36, 50. The first line of the
14   petition asks this Court to prevent DHS "from returning her to an immigration jail pending
15   resolution of her removal case without a due process hearing." Pet. ¶ 1. Because those
16   proceedings have been terminated, this case is distinguishable from the cases on which Meza
17   relies, as discussed below.

18   In *Ortega*, the district court determined that a noncitizen who was released on bond
19   pending removal proceedings was entitled to a hearing before the bond was altered or revoked.
20   *See Ortega v. Bonnar*, 415 F. Supp. 3d 963 (N.D. Cal. 2019). The district court found that
21   "Ortega ha[d] a liberty interest in remaining on bond" and that injunctive relief was warranted
22   under the facts of the case. *See id.* at 966. In *Jorge M.F.*, the district court determined that a
23   noncitizen who was released on bond pending removal proceedings, but whose bond was revoked,
24   was entitled to a hearing before an IJ before being re-detained. *Jorge M.F. v. Jennings*, 534 F.
25   Supp. 3d 1050, 1055-56 (N.D. Cal. 2021). In both *Ortega* and *Jorge M.F.*, the district court found
26   that the noncitizen had a liberty interest in conditional release during the pendency of removal
27   proceedings. Meza had a similar liberty interest in her conditional release while the recent
28   removal proceedings were pending. However, those removal proceedings have been terminated,

8

and thus – unlike the noncitizens in *Ortega* and *Jorge M.F.* – Meza no longer has a liberty interest in conditional release pending those proceedings.

In *Centeno-Ortiz*, also cited by Meza, a noncitizen filed a habeas petition to challenge his physical detention by ICE, and he was discretionarily released on parole while the petition was pending. *See Centeno-Ortiz v. Culley*, No. 11-CV-1970-IEG POR, 2012 WL 170123 (S.D. Cal. Jan. 19, 2012). The district court found that the petition was not moot, because the noncitizen could still secure a nondiscretionary release while his immigration case proceeded. *See id*. at *4. The district court ordered that in the event the noncitizen's conditional parole was revoked, he would be entitled to an individualized bond hearing before an immigration judge. *See id*. at *9. Meza is not subject to conditional parole, or other conditional release, pending resolution of immigration proceedings, because those proceedings have been terminated. Her case therefore is distinguishable from that of the parolee in *Centano-Ortiz*.

The Court finds that Meza's habeas petition is moot. The Court next turns to Meza's argument that three exceptions to the mootness doctrine apply.

**B.     The Collateral Consequences Exception Does Not Apply**

Meza first argues that the collateral consequences exception applies to her petition. "For a habeas petition to continue to present a live controversy after the petitioner's release or deportation . . . there must be some remaining 'collateral consequence' that may be redressed by success on the petition." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007). "For a collateral consequence to present a continuing live case or controversy, it must be a concrete legal disadvantage, and not merely a speculative or contingent injury." *Perez v. Murray*, No. 18-CV-01437-JSC, 2018 WL 2724241, at *2 (N.D. Cal. June 6, 2018).

Meza asserts that there are three collateral consequences that may be redressed by success on her petition. First, she contends that if the Court were to dismiss the petition, she would lose the benefit of the $2,000 bond posted by her son. Meza states that after a bond is revoked or cancelled, it can take months or years for the money to be returned. She suggests that if DHS decides to arrest and detain her in the future, she would be unable to post bond because she would not have access to the original $2,000 used to post her first bond. This argument is without merit.

Meza is not currently released on bond. The IJ's bond order was vacated in April 2018. *See* Louis Decl. ¶ 13, Exh. K. The removal proceedings in which the bond order issued were terminated on July 26, 2019. *See* Mehta Decl. Exh. 3. On this record, Meza presents no basis to conclude that she would forfeit the $2,000 if she were arrested in the future. Nor does she explain how the current petition could redress DHS's failure to return the bond amount to her son.

Second, Meza contends that DHS could choose to arrest and detain her at some future date, in which case she could face another period of prolonged confinement in an immigration jail. The possibility that Meza could be subject to future immigration proceedings does not present a concrete legal disadvantage sufficient to implicate the collateral consequences exception. *See Spencer v. Kemna*, 523 U.S. 1, 14 (1998) (possibility that parole revocation could be used to petitioner's detriment in a future parole proceeding too speculative to constitute a collateral consequence sufficient to confer Article III standing). Moreover, any such legal disadvantage could not be redressed by success on the present petition, which asserts a liberty interest in Meza's conditional release pending resolution of the removal proceedings that she was in when she filed the petition. Vindication that liberty interest, either by injunctive relief or by declaratory relief, would not speak to Meza's constitutional rights in future immigration proceedings. Meza has not been subject to detention for nearly five years, and she has not been in removal proceedings for three years. The Court has no way to know what factual circumstances may have changed since Meza's release on bond and subsequent termination of her removal proceedings. *See Guido v. Sepulveda*, No. C 07-3873 CW, 2008 WL 2021751, at *2 (N.D. Cal. May 8, 2008) (finding no collateral consequences based on possible future detention because "the Court cannot address the legality of Petitioner's potential future detention when the factual and legal bases for that detention are not yet known").

Third, Meza argues that re-imprisonment at a detention center would harm not only her, but also her family. For the reasons discussed above, the possibility of future immigration proceedings is too speculative to implicate the collateral consequences exception. Moreover, that asserted consequence could not be redressed by success on the present petition, for the reasons also discussed above.

1    In conclusion, the collateral consequences exception does not apply.

2    **C.      The Voluntary Cessation Exception Does Not Apply**

Meza next invokes the voluntary cessation exception. Under that exception, a district court may retain jurisdiction even though no remaining controversy remains before it, on the ground that the party asserting mootness voluntarily ceased illegal conduct but is "free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citation omitted). Where the challenged conduct was ceased voluntarily, the party asserting mootness must show that the challenged conduct could not reasonably be expected to recur. *See id*.

In the present case, the alleged infringement of Meza's due process rights during the pendency of her removal proceedings ceased not because of any voluntary conduct on the part of DHS, but because Meza successfully moved to terminate the removal proceedings. Accordingly, the voluntary cessation exception does not apply. *See Oregon Nat. Res. Council, Inc. v. Grossarth*, 979 F.2d 1377, 1379 (9th Cir. 1992) (rejecting plaintiffs' assertion of the voluntary cessation exception where the defendants' cancellation of a challenged sale was the result of the plaintiffs' successful administrative appeal). Meza argues that the voluntary cessation exception nonetheless applies, because DHS elected not to appeal the termination of her removal proceedings. Meza relies on *Diouf* to support her position, but that reliance is misplaced, as discussed below.

In *Diouf*, the petitioner alleged that ICE had subjected him to prolonged detention pending removal proceedings. *See Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011). The district court granted a preliminary injunction requiring a bond hearing before an IJ, and the IJ released the petitioner on bond. *See id.* at 1083-84. On appeal from that order, the Ninth Circuit vacated the preliminary injunction because the district court had applied the wrong statute in determining whether the petitioner was entitled to a bond hearing; the Ninth Circuit remanded for the district court to determine whether the applicable statute requires bond hearings for detained noncitizens. *See id.* at 1084. On remand, the district court concluded that the applicable statute does not require bond hearings and it denied the petitioner's motion for a preliminary injunction on that

11

basis. *See id.* On appeal, the Ninth Circuit questioned whether the petitioner's claims had become moot given that the petitioner had been free on bond for several years and the government had not elected to re-detain him. *See id.* at 1084 n.3. The Ninth Circuit found that the voluntary cessation exception applied, because absent court action the government could re-detain the petitioner at any time without a bond hearing. *See id.*

*Diouf* does not speak to the applicability of the voluntary cessation exception where, as here, the petitioner takes action that moots the controversy and the government does not appeal. Meza argues that, like the petitioner in *Diouf*, she is subject to re-detention by DHS at any time. However, Meza is not subject to re-detention in connection with the removal proceedings initiated in 2016, because those proceedings have been terminated. Meza's petition requests relief only pending resolution of those proceedings. Her case thus is factually distinguishable from *Diouf*, in which immigration proceedings were ongoing but the government chose not to re-detain the petitioner.

Consequently, the Court finds that the voluntary cessation exception does not apply.

**D.    The Capable of Repetition Yet Evading Review Exception Does Not Apply**

Finally, Meza argues that her petition is not moot because it alleges wrongs that are capable of repetition yet evading review. This exception "is limited to extraordinary cases in which: (1) the duration of the challenged action is too short to be fully litigated before it ceases; and (2) there is a reasonable expectation that the plaintiffs will be subjected to the same action again." *Am. Rivers*, 126 F.3d at 1124. This case does not satisfy either component.

"The duration component of the repetition/evasion analysis is present where the underlying action is almost certain to run its course before either [the appellate] court or the Supreme Court can give the case full consideration." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173 (9th Cir. 2002). Courts have found this requirement to be met by a regulation in effect for less than a year, because a year is not enough time for judicial review, *see Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 (9th Cir. 1992); by litigation regarding one-year and two-year permits that likely would expire before appellate review could be completed, *see Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 856 (9th Cir. 1999); and in the election context where

1  "the period of time between legislative authorization of the proposal and its submission to the
2  voters was approximately 18 months," *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 774
3  (1978).

4        In the present case, the durational component is not satisfied, because nothing in this
5  record suggests that a future detention by ICE would be of such short duration as to preclude Meza
6  from obtaining judicial review. Her concern is that her Fifth Amendment rights may be violated
7  by future prolonged detention without a bond hearing. A prolonged detention would afford the
8  opportunity for litigation. Indeed, in the present case, Meza filed her petition on May 8, 2018, and
9  this Court granted a TRO on May 10, 2018. Meza's argument that she could not obtain judicial
10 review "before suffering irreparable injury" is not the standard for application of this exception to
11 mootness, and she cites no case applying that standard. She relies on *Domingo-Jimenez* for the
12 proposition that "[i]t is abundantly clear that any re-arrest and re-incarceration will have already
13 occurred before any district court 'can give the action full consideration.'" Opp. at 25. However,
14 in *Domingo-Jimenez* the district court found that the capable of repetition exception did not apply,
15 because the potential future controversy would be reviewable. *See Domingo-Jimenez v. Lynch*,
16 No. C 16-05431 WHA, 2017 WL 235194, at *5 (N.D. Cal. Jan. 19, 2017).

17       The reasonable expectation component is not satisfied either. In order to satisfy this
18 component, Meza "must establish a demonstrated probability that the same controversy will recur
19 involving the same litigants." *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985).
20 "Speculative contingencies afford no basis for finding the existence of a continuing controversy
21 between the litigants as required by article III." *Id*. Meza has not made this showing, because
22 whether ICE will re-arrest and detain her in future immigration proceedings is entirely speculative.
23 *See Dellaguardia v. Gonzales*, No. C06-1378-MJP, 2007 WL 2155719, at *3 n.4 (W.D. Wash.
24 July 23, 2007) (declining to apply exception because "petitioner's contention that he may be
25 detained and subject to removal proceedings again is based on a mere theoretical possibility, not a
26 'reasonable expectation' or 'demonstrated probability'").

27       The Court finds that this exception does not apply.

28

### E. Dismissal of Petition and Entry of Judgment is Appropriate

In a footnote on the last page of her opposition brief, Meza requests leave to amend her petition in the event the Court determines it is moot. *See* Opp. at 25 n.6. She has not submitted a proposed petition or provided any detail as to her proposed amendment. Meza's counsel fleshed out the request for leave to amend substantially at the hearing. The Court indicated that it would consider those arguments in ruling on the Government's motion. Having considered them, the Court concludes that leave to amend would not be appropriate. Meza's petition asserts a distinct due process claim arising out of removal proceedings that since have been terminated on her motion. It has been nearly five years since Meza was detained and three years since she had been in removal proceedings. Under those circumstances, any constitutional claims arising out of future immigration proceedings – which necessarily would be based on new and as-yet unknown facts – should be brought in a separate petition.

In the same footnote, Meza asks the Court to keep this action open so that she may file a motion for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. That motion may be filed after judgment. The statute provides that "[a] party seeking an award of fees and other expenses shall, *within thirty days of final judgment in the action*, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection. . . ." 28 U.S.C.A. § 2412(d)(1)(B) (emphasis added).

Accordingly, the Court finds it appropriate to grant the Government's motion to dismiss the petition and to enter judgment in this case.

## IV. ORDER

(1) The Government's motion to dismiss the petition as moot is GRANTED;

(2) A separate judgment will be entered; and

(3) This order terminates ECF 35.

Dated: July 26, 2022

_____
BETH LABSON FREEMAN
United States District Judge

14